IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 25-cv-8854 |
| SEIBERT GROUP 1, LLC d/b/a SG HOME | ) | |
| BUILDERS, and JOHN KEARNS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, NAUTILUS INSURANCE COMPANY ("Nautilus"), by and through its attorneys, Traub Lieberman Straus & Shrewsberry, LLP, and for its Complaint for Declaratory Judgment against Defendants, SEIBERT GROUP 1, LLC d/b/a SG HOME BUILDERS ("SG"), and JOHN KEARNS ("Kearns"), states as follows:

## THE PARTIES

1. Plaintiff Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona.

2. Defendant SG is, and at all relevant times has been, a Limited Liability Company organized under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, the sole member of SG is Ryan Siebert ("Siebert") who is, and has been, a resident of Illinois and therefore, a citizen of Illinois.

3. Upon information and belief, Defendant Kearns is, and has been, a resident of Illinois and therefore, is a citizen of Illinois.

4.      Kearns is the plaintiff in the lawsuit styled *John Kearns v. Brightleaf Homes, LLC.,* *et. al.*, pending under case no. 2025L004206 in the Circuit Court of Cook County, Illinois (the "Underlying Lawsuit"), for which coverage is sought from Nautilus by SG.

5.      Kearns is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure, so that he may be bound by the judgment entered in this case. If Kearns executes a stipulation agreeing to be bound by any judgment entered herein, Nautilus will file an amended complaint that does not name Kearns as a defendant.

## JURISDICTION AND VENUE

6.      Nautilus brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

7.      There exists an actual and justiciable controversy among the parties concerning the rights, duties, and obligations of Nautilus under and pursuant to the policy of insurance described herein in connection with the Underlying Lawsuit.

8.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Nautilus on the one hand and Seibert of SG and the Underlying Plaintiff on the other hand.

9.      The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, this case relates to coverage sought from a commercial general liability insurance policy issued by Nautilus providing liability limits of $1 million per occurrence and $2 million in the aggregate subject to its terms, conditions, and exclusions. The Underlying Lawsuit seeks damages in excess of $75,000.

10.      Venue is proper pursuant to 28 U.S.C. §1391(b) because at least one defendant resides in this judicial district. Moreover, the Underlying Lawsuit at issue in this declaratory action is currently pending in the Circuit Court of Cook County, Illinois.

## THE UNDERLYING LAWSUIT

11.     On March 25, 2025, Kearns initiated the Underlying Lawsuit in the Circuit Court of Cook County against Brightleaf Homes, LLC ("Brightleaf"), SG, Sterne Construction Group, LLC ("Sterne"), Brisko Electric Corporation ("Brisko"), Kattom Electric, Inc. ("Kattom"), R.J. Kielion Plumbing & Heating Co. ("R.J."), Professional Plumbing Heating & Cooling, LLC ("Professional"), and Kalpesh Patel ("Patel") (collectively, "Underlying Defendants"). A true and correct copy of the Complaint filed by Kearns on March 25, 2025 is attached hereto as **Exhibit A** and incorporated herein by reference.

12.     The Underlying Lawsuit alleges that on or about June 15, 2023, and for some time prior, Patel owned a residential premises located at or near 4529 Roslyn Road, Downers Grove, Illinois (the "Jobsite"). *See* Ex. A, ¶10.

13.     The Underlying Lawsuit alleges that on or about June 15, 2023, and/or for or at some time prior, Brightleaf, SG, Sterne, Brisko, Kattom, R.J., and/or Professional were retained by and/or contracted with Patel to perform services or work as part of a new residential construction project to construct a single-family home located at or near the Jobsite. *See* Ex. A, ¶¶11-12.

14.     SG entered into a contract with Sterne Construction pursuant to which Sterne Construction performed concrete work at the Jobsite.

15.     Sterne Construction contracted with Welsh Ready Mix to deliver concrete mix to the Jobsite.

16.     The Underlying Lawsuit alleges that on or about June 13, 2023, Kearns was working in the scope of his employment while delivering concrete mix to the Jobsite as part of the ongoing construction project. *See* Ex. A, ¶13.

17.     The Underlying Lawsuit alleges that during his concrete delivery to the Jobsite, Kearns was walking alongside his semi-truck when he stepped into or on a hidden hazard and unsafe ground conditions and sustained injuries. *See* Ex. A, p. 14 at ¶17, p. 15 at ¶20, p. 17 at ¶17, p. 18 at ¶20, p. 19 at ¶16, p. 22 at ¶21.

18.     The Underlying Lawsuit alleges that on or about June 15, 2023, and for a long time prior thereto, SG owned, possessed, operated, managed, maintained, designed, inspected, planned and controlled or had a duty to perform such actions, both directly and indirectly, individually and through its agents, servants and employees, a certain premises located at or near the Jobsite. *See* Ex. A, p. 13 at ¶15, p. 16 at ¶15.

19.     The Underlying Lawsuit further alleges that SG: (1) owned and/or was in charge of the erection, construction, repairs, alteration, and/or removal of a certain premises at the Jobsite; (2) was present during the course of such erection, construction, repairs, alteration, and/or removal; (3) participated in coordinating the work performed and designated work methods, (4) maintained and checked work progress; (5) participated in in the scheduling and inspection of the work; and (6) had the authority to stop the work, refuse the work and materials, and order changes in the work. *See* Ex. A, p. 19 at ¶15, p. 20 at ¶17.

20.     The Underlying Lawsuit alleges that SG created and/or allowed a hole, dig out, ditch, utilities hole/dig site, sewage drain hole, or recessed sewage drain to remain or become obscured by overgrown grass, which created a hazardous condition and unreasonable risk of harm to individuals lawfully walking around and working in the area, including Kearns. *See* Ex. A, p. 14 at ¶18, p. 17 at ¶18, p. 20 at ¶19.

21.     The Underlying Lawsuit alleges that SG carelessly and negligently: (1) improperly operated, managed, maintained, and controlled the premises at the Jobsite; (2) failed to reasonably

inspect the Jobsite and the work performed when SG knew, or should have known, that such inspection was necessary to prevent Kearns' injuries; (3) failed to implement a reasonable inspection system to regularly sweep for unsafe hazardous conditions at the Jobsite; (4) failed to warn Kearns of the dangerous conditions when SG knew, or should have known, that such warning was necessary to prevent Kearns' injuries; (5) failed to make necessary repairs or take precautions to fill, cover, or mark the hazardous condition which posed an unreasonable risk of harm to those working in the area; (6) failed to provide adequate safeguards to prevent Kearns from getting injured; (7) negligently dug, tunneled, burrowed, and/or excavated a hole at the jobsite, leaving the ground uneven and unreasonably dangerous; failed to fill a hole after the work was completed, leaving a hazard behind in the work area without ensuring that said hole was filled or marked; (8) failed to comply with a site safety plan addressing dangerous ground or surface conditions; (9) failed to adhere to appropriate codes and requirements for the premises; (10) negligently coordinated for concrete to be delivered in an area with incomplete work and hidden hazardous conditions; (11) negligently controlled the Jobsite; (12) negligently directed Kearns where to park and deliver the concrete, exposing him to the hidden hazard; (13) failed to mark or warn individuals on the Jobsite of the hidden hole; (14) failed to make necessary repairs or take precautions to fill, cover, or properly mark the recessed sewage drain; (15) failed to ensure a safe, suitable, and proper passageway for Kearns to access the Jobsite and perform his concrete delivery duties; and/or (16) was negligent and careless in its role within the construction project. *See* Ex. A, pp. 14-15 at ¶19, pp. 17-18 at ¶19, pp. 20-22 at ¶20.

22.     The Underlying Complaint asserts causes of action against SG for premises liability, negligence, and construction negligence. *See* Ex. A, pp. 13-23.

## THE NAUTILUS POLICY

23.     Nautilus issued a commercial general liability policy to SG as the named insured bearing policy no. PN1241450, effective from September 1, 2022 to September 1, 2023 (the "Nautilus Policy"). The Nautilus Policy, subject to its terms and conditions, provides liability limits of $1 million per occurrence and $2 million in the aggregate. A true and accurate copy of the Nautilus Policy is attached hereto as **Exhibit B** and incorporated herein by reference.

## COUNT I – NO DUTY TO DEFEND
## INJURY TO WORKERS EXCLUSION

24.     Nautilus adopts and realleges the allegations in Paragraphs 1 through 23 of its Complaint for Declaratory Judgment as and for Paragraph 24 of Count I of its Complaint for Declaratory Judgment, as if fully set forth herein.

25.     Insuring Agreement A of the Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**I.**     **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. […]

* * *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)     The "bodily injury" or "property damage" occurs during the policy period;

* * *

*See* Ex. B, p. 13.

26.     Insuring Agreement A of the Nautilus Policy provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" during the policy period.

27.     Kearns filed the Underlying Lawsuit against SG, who is the named insured on the Nautilus Policy and, therefore, an insured. *See* Ex. B, p. 2.

28.     Coverage under the Nautilus Policy, however, is subject to exclusions. Specifically, the Nautilus Policy contains an Injury to Workers Exclusion, which was added to the Nautilus Policy by an endorsement titled "Exclusion - Injury to Employees, Contractors, Volunteers and Other Workers" (Form L205 (11/10)) ("Injury to Workers Exclusion").

29.     The Injury to Workers Exclusion precludes coverage for the following:

**e.   Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)**     "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)**     Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)**     Employment by any insured; or

**(b)**     Directly or indirectly performing duties related to the conduct of any insured's business; or

* * *

This exclusion applies:

    **(1)**      Regardless of where the:

        **(a)**      Services are performed; or

        **(b)**      "Bodily injury" occurs; and

    **(2)**      Whether any insured may be liable as an employer or in any other capacity; and

    **(3)**      To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See* Ex. B, p. 43.

30.　　The Injury to Workers Exclusion bars coverage under the Nautilus Policy for "bodily injury" to SG's own employees, leased workers, temporary workers, volunteer workers, contractors, subcontractors, or independent contractors, "arising out of and in the course of . . . employment" or "[d]irectly or indirectly performing duties related to the conduct of any insured's business."

31.　　The Injury to Workers Exclusion also bars coverage under the Nautilus Policy for "bodily injury" to employees, workers, contractors, subcontractors, or independent contractors of any of SG's contractors, subcontractors, or independent contractors, "arising out of and in the course of . . . employment" or "[d]irectly or indirectly performing duties related to the conduct of any insured's business."

32.　　The Injury to Workers Exclusion applies if Kearns was an employee, worker, contractor, subcontractor, or independent contractor of SG's contractors, subcontractors, or independent contractors.

33.　　SG was a general contractor for the construction project at the Jobsite.

34.　　SG entered into a contract with Sterne Construction pursuant to which Sterne Construction performed concrete work at the Jobsite.

35.     Sterne Construction contracted with Welsh Ready Mix to deliver concrete mix to the Jobsite.

36.     At the time of his alleged injuries, Kearns was a subcontractor of SG's contractor, subcontractor, or independent contractor.

37.     To the extent Kearns was injured at the Jobsite as alleged, he was injured at the Jobsite while performing duties within the course and scope of his employment with Welsh Ready Mix.

38.     To the extent Kears was injured at the Jobsite as alleged, his injuries arose out of and in the course of directly or indirectly performing duties related to the conduct of SG's business.

39.     The Injury to Workers Exclusion applies to bar coverage for the claims asserted in the Underlying Lawsuit.

40.     An actual controversy exists between Nautilus and SG, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff Nautilus respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the Injury to Workers Exclusion of the Nautilus Policy precludes coverage for the Underlying Lawsuit.

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend SG against the Underlying Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II – NO DUTY TO INDEMNIFY
## INJURY TO WORKERS EXCLUSION

41.     Nautilus adopts and realleges the allegations in Paragraphs 1 through 40 of its Complaint for Declaratory Judgment as and for Paragraph 41 of Count II of its Complaint for Declaratory Judgment, as if fully set forth herein.

42.     Because Nautilus does not owe a duty to defend SG in the Underlying Lawsuit, Nautilus does not owe a duty to indemnify SG in the Underlying Lawsuit.

WHEREFORE, Plaintiff Nautilus respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the Injury to Workers Exclusion of the Nautilus Policy precludes coverage for the Underlying Lawsuit.

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policy to indemnify SG for any judgment in or settlement of the Underlying Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

Dated: July 29, 2025                    Respectfully submitted,

**TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP**

By: /s/ Jeremy S. Macklin
Jeremy S. Macklin (6303870)
Dana A. Rice (6283827)
71 South Wacker Drive, Suite 2110
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-3908
jmacklin@tlsslaw.com
drice@tlsslaw.com
One of the Attorneys for Plaintiff
*Nautilus Insurance Company*